**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SIDDEEQ Q. WILLIAMS, <br><br> Defendant. | Case No. 3:17-cr-00484 (BRM) <br><br> **OPINION** <br> **TEMPORARILY FILED UNDER SEAL** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Siddeeq Q. Williams's ("Williams") Motion for Reconsideration or, in the alternative, Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion").[1] (ECF No. 70.) Williams seeks reconsideration of the Court's September 6, 2022 Opinion and Order (ECF Nos. 65, 66), which denied Williams's prior Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF Nos. 32, 34). Williams filed a letter to supplement the Motion. (ECF No. 72.) Plaintiff United States of America (the "Government") filed an opposition (ECF No. 73), and Williams filed a reply (ECF No. 74). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Williams's Motion is **DENIED**.

---

[1] Williams filed the Motion as a Motion for Reduction of Sentence. However, Williams "ask[ed] that the Court treat this filing as a Motion for Reconsideration" of the Court's September 6, 2022 Opinion and Order (ECF Nos. 65, 66) or "[i]n the alternative, this Motion may be considered to be a new filing of a Motion for Compassionate Release also filed pursuant to 18 U.S.C § 3582 (c)(1)(A)(i)" (ECF No. 70 at 1). Therefore, the Court construes the Motion as a Motion for Reconsideration or, in the alternative, as a Motion for Compassionate Release.

I.  **BACKGROUND**[2]

On November 8, 2017, Williams pled guilty to conspiring to distribute controlled substances and assaulting federal officers, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 111(a)(1) and 111(b). (ECF No. 30 at 1; *see also* ECF No. 24.) The Court imposed a sentence of 121 months of imprisonment and five years of supervised release. (ECF No. 30 at 2.) As of June 20, 2023[3], according to the Bureau of Prisons (the "BOP"), Williams has served 66.1% of his 121-month statutory term if considering his projected good time credit.[4] (Sentence Monitoring Computation (ECF No. 74-1 at 3).) Williams is serving his time at FCI Fort Dix ("Fort Dix"). (ECF No. 70 at 5.)

On December 18, 2020, Williams filed duplicative motions for reduction of sentence which requested compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[5] (ECF Nos. 32, 34.) Thereafter, Williams filed a series of supplemental letters. (ECF Nos. 35–36, 40–43.) On June 7, 2021, the Government opposed the motions. (ECF No. 44.) On February 24, 2022, Williams filed his reply. (ECF No. 53.) Williams filed letters supplementing his reply. (ECF Nos. 59, 61.) The Government filed letters supplementing its opposition. (ECF Nos. 57, 60.) The Court heard oral

---

[2] The background of this matter is well-known to the parties. Therefore, in the interest of judicial economy, the Court provides a supplemented version of the background which was previously provided by the Court in the September 6, 2022 Opinion. (ECF No. 65.)

[3] Williams provided the Court with sentence computation data from June 20, 2023, in support of his motion.

[4] Not accounting for Williams's projected good time credit, Williams has served 57.5% of his 121-month sentence as of June 20, 2023.

[5] Williams also filed a motion to seal (ECF No. 33) one of the motions for reduction of sentence (ECF No. 32). The Court granted Williams's request. (ECF No. 38.) The Court also granted Williams's request (ECF No. 51) to file exhibits under seal (ECF No. 52).

argument on May 11, 2022. (ECF No. 62.) Williams filed another letter on July 13, 2022.[6] (ECF No. 63.)

On September 6, 2022, the Court issued an opinion and order denying Williams's motions for reduction of sentence.[7] (ECF Nos. 65, 66.) The Court found Williams satisfied the statutory exhaustion requirement under § 3582(c)(1)(A). (ECF No. 65 at 4 n.4.) However, the Court held Williams did not meet the required "extraordinary and compelling" standard for his sentence reduction "[b]ecause Williams is fully vaccinated, he has failed to identify a medical condition that renders him particularly vulnerable to serious consequences if infected with COVID-19. Additionally, he has not identified specific conditions in the institution that would increase the likelihood of COVID-19 infection." (*Id*. at 7.) The Court further held Williams had not satisfied the applicable sentencing factors under § 3553(a). (*Id*. at 8–9.)

On May 19, 2023, Williams filed a Motion to Seal the exhibits to the forthcoming Motion (ECF No. 68), which motion to seal the Court granted by Order dated May 19, 2023 (ECF No. 69). On May 25, 2023, Williams filed a Motion for Reconsideration or, in the alternative, Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based on his various health issues and his inability to receive proper care at Fort Dix. (ECF No. 70.) On June 5, 2023, Williams filed a letter to supplement the Motion. (ECF No. 72.) On June 12, 2023, the Government filed an opposition. (ECF No. 73.) On June 26, 2023, Williams filed a reply. (ECF No. 74.)

On August 21, 2023, the Government filed a letter stating it provided the Court and Williams with the BOP's medical records documenting Williams's treatment from June 1, 2023

---

[6] On July 28, 2022, Williams filed a duplicative letter with the Court. (ECF No. 64.)

[7] The Court originally filed the September 6, 2022 Opinion under seal but the parties informed the Court that redactions were unnecessary; therefore, the Court unsealed the September 6, 2022 Opinion on April 12, 2023. (ECF No. 67.)

through August 21, 2023, and requesting these records be placed under seal due to their sensitive nature. (ECF No. 75.) On September 8, 2023, the Government filed another letter stating it provided the Court and Williams with the BOP's medical records documenting Williams's most recent treatment, and requesting these records likewise be placed under seal. (ECF No. 76.) On the same day, the Court granted the Government's request and filed Williams's medical records under seal. (ECF Nos. 77, 78.) On September 12, 2023, the Government filed a third letter stating it provided the Court and Williams with the BOP's medical records documenting Williams's most recent treatment, and requesting these records also be placed under seal. (ECF No. 79.)

## II. LEGAL STANDARD

### A. Motion for Reconsideration

While not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are proper pursuant to this District's Local Criminal Rule 1.1, which expressly adopts Local Civil Rule 7.1(i). *See United States v. Curry*, No. 04-280, 2006 WL 1320083, at *1 n.2 (D.N.J. May 12, 2006). The Third Circuit has also held that a motion for reconsideration may be filed in a criminal matter. *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003). However, the comments to Local Civil Rule 7.1(i) make clear that "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, Civ. A. No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003)). Local Civil Rule 7.1(i) provides that a motion for reconsideration must be "filed within 14 days after the entry of the order or judgment on the original motion by the Judge." L. Civ. R. 7.1.

A motion for reconsideration "may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). To prevail

on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F. 3d 669, 677 (3d Cir. 1999); *see also N. River Ins. Co. v. CIGNA Reinsurance, Co.*, 52 F. 3d 1194, 1218 (3d Cir. 1995) (internal quotations omitted). A court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09–4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008)). In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].").

      **B.**    **Motion for Reduction of Sentence**

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the BOP or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing

5

Commission"; and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission (the "Sentencing Commission") has issued a policy statement which permits a court to grant compassionate release and a sentence reduction "upon motion of the Director of the Bureau of Prisons or the defendant" and a finding of: (i) extraordinary and compelling reasons; (ii) the defendant is not a danger to the safety of others or to the community as provided in 18 U.S.C. § 3142(g); and (iii) release from custody complies with the § 3553(a) factors, to the extent applicable (the "Policy Statement"). U.S. Sent'g Comm'n, Guidelines Manual ("U.S.S.G.") § 1B1.13(a) (U.S. Sent'g Comm'n 2023). Neither § 3582(c)(1)(A) nor the Policy Statement explicitly define the key terms "extraordinary and compelling," "apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release." *United States v. Batista*, No. 18-415, 2020 WL 4500044, at *2 (D.N.J. Aug. 5, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)), *appeal dismissed*, No. 20-2746, 2021 WL 688971 (3d Cir. Feb. 4, 2021).

The Sentencing Commission recently amended the Policy Statement, expanding the list of specified "extraordinary and compelling reasons" warranting a sentence reduction, which amendment became effective on November 1, 2023. *See* U.S.S.G. § 1B1.13. The Policy Statement provides a defendant may establish extraordinary and compelling reasons warranting a reduction of sentence based on: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse while in custody; (5) "other reasons"; or (6) whether the defendant has served at least 10 years of the term of imprisonment for "an unusually long sentence." U.S.S.G. § 1B1.13(b).

The defendant's "[m]edical [c]ircumstances" constitute extraordinary and compelling reasons when:

>  (A) The defendant is suffering from a terminal illness . . . ; [or]
>  (B) The defendant is—
>      (i) suffering from a serious physical or medical condition,
>      (ii) suffering from a serious functional or cognitive impairment, or
>      (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>  (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1). Further, the Policy Statement provides a defendant's "rehabilitation . . . is not, by itself, an extraordinary and compelling reason . . . . [R]ehabilitation of the defendant while serving the sentence may be considered . . . in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

"Compassionate release is discretionary, not mandatory; even if a defendant is eligible, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Parnell*, No. 21-2312, 2022 WL 73754, at *1 (3d Cir. Jan. 7, 2022).

### III. DECISION

Williams requests the Court consider the Motion as either a motion for reconsideration or, in the alternative, a motion for compassionate release pursuant to 18 U.S.C § 3582 (c)(1)(A)(i). (ECF No. 70 at 1.) The Court addresses the Motion under each applicable standard.

A.         **Motion for Reconsideration**

In the portion of his motion seeking reconsideration, Williams acknowledges the Motion was filed past the time limitations set forth in Local Civil Rule 7.1(i) and Rule 59 of the Federal Rules of Civil Procedure. (*Id*. at 3.) Instead, Williams seeks relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (*Id*.) Williams asserts the Motion is based on reasons (2) and (6) of Rule 60(b). (*Id*. at 4.) In opposition, the Government argues Williams has not provided newly discovered evidence or other new circumstances that would warrant reconsideration. (ECF No. 73 at 4.) In reply, Williams reiterates he is entitled to reconsideration because his condition has worsened and there is significantly less time remaining on his sentence. (ECF No. 74 at 2.)

The Court finds Williams's reliance on Rule 60(b)[8] as a basis for reconsideration in a criminal matter is misguided. *See Murphy v. United States*, 836 F. App'x 84, 85–86 (3d Cir. 2021) (noting Rule 60(b) is not applicable to criminal cases); *United States v. Knight*, 315 F. App'x 435 (3d Cir. 2009) (holding the Federal Rules of Civil Procedure do not apply to criminal cases); Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."); *Gray v. United States*, 385 F. App'x 160, 162 (3d Cir. 2010) ("Rule 60(b) cannot be used as an independent means to relieve a defendant of a judgment in a criminal case, because the Federal Rules of Civil Procedure are not applicable to criminal cases.") Although "motions for reconsideration may be filed in criminal cases," *Fiorelli*, 337 F.3d at 286, Williams has failed to identify any relevant caselaw in which Rule 60(b) was successfully invoked to reconsider a court's denial of a motion for reduction of sentence. Indeed,

---

[8] Rule 60(b) of the Federal Rules of Civil Procedure provides six grounds under which relief may be sought from a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). The relevant grounds to the Motion are: "newly discovered evidence, that with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; and "any other reason that justifies relief."

8

the Court similarly did not find any such caselaw. Notwithstanding, Williams has not presented "newly discovered evidence" or "any other reason" which warrants reconsideration. Fed. R. Civ. P. 60(b).

Accordingly, Williams's motion seeking reconsideration of the Court's September 6, 2022 Opinion and Order (ECF Nos. 65, 66) is **DENIED**.

### B.     Motion for Reduction of Sentence

The parties agree Williams satisfied the statutory exhaustion requirement.[9] (ECF No. 70 at 5; ECF No. 73 at 8.) The Court now turns to the substance of the Motion.

In the portion of his motion for reduction of sentence and compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i), Williams argues this motion is not a recitation of his prior motions for compassionate release but rather this motion is based on newly available evidence. (ECF No. 70 at 4.) Williams contends this new information includes: (1) he has served an increased percentage of the term of incarceration already served; (2) there has been a change in his sentencing computation; and (3) his health has deteriorated due to an inability to receive proper treatment at Fort Dix. (*Id*.)

#### 1.     "Extraordinary and Compelling Reasons" and the Policy Statement

Williams asserts the Court should apply the Sentencing Commission's proposed amendment to U.S.S.G. § 1B1.13, which provides "clear and definitive definitions" for "extraordinary and compelling reasons." (*Id*. at 9.) Williams contends his prior motions seeking a reduction of sentence was primarily predicated on his health problems exacerbated by the risk of

---

[9] Section 3582(c)(1)(A) provides a court may entertain a motion for compassionate release "only after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" *See United States v. Johnson*, No. 21-2649, 2022 WL 1402048, at *1 (3d Cir. May 4, 2022) (quoting 18 U.S.C. § 3582(c)).

COVID-19. (*Id*. at 10.) Williams asserts in this Motion, however, "extraordinary and compelling reasons" are present which warrant a sentence reduction because his medical conditions—including Chronic Kidney Disease ("CKD") Stage 3, obesity, and prediabetes—have not been properly treated since the September 6, 2022 Order and Opinion. (*Id*.) Williams submits he has been identified by the medical staff at Fort Dix as an inmate with "underlying medical conditions associated with high risk for severe COVID-19." (*Id*. at 14.) Williams contends he has not received proper treatment for his CKD Stage 3. (*Id*. at 15–19.) Williams also argues he cannot properly manage his obesity and pre-diabetes under confinement. (*Id*. at 19–20.) Williams asserts the overcrowding, understaffing, and COVID-19 restrictions as Fort Dix have created an "unhealthy environment" for inmates including himself. (*Id*. at 20.)

The Government counters Williams's reliance on the Sentencing Commission's amendment is misplaced because the amendment is not yet effective. (ECF No. 73 at 6 n.4.) The Government also contends Williams is not entitled to a sentence reduction because Williams has not presented any extraordinary and compelling reason to justify his release. (*Id*. at 8–11.) The Government asserts the BOP's medical staff is appropriately managing Williams's CKD. (*Id*. at 9-10.) Additionally, the Government submits Williams can manage his obesity and prediabetes at Fort Dix because he exercises and has received guidance about a healthier lifestyle. (*Id*. at 10–11.) The Government notes Williams weighed six pounds less in May 2023 compared to December 2022. (*Id*. at 11.) The Government further argues the conditions of Fort Dix do not constitute a basis for relief. (*Id*.)

In reply, Williams acknowledges the proposed amendment to U.S.S.G. § 1B1.13 is not yet controlling but also notes circuit courts have previously applied a proposed amendment to the

10

sentencing guidelines prior to the effective date. (ECF No. 74 at 3–5.) Williams also reiterates the BOP's medical staff is not adequately treating his medical conditions. (*Id*. at 9–13.)

The proposed amendment to U.S.S.G. § 1B1.13 was not effective when the Motion was briefed. Although not completely analogous, a sentencing court "may consider pending amendments to the guidelines" at the time of initial sentencing. *See United States v. McMillan*, 863 F.3d 1053, 1058 (8th Cir. 2017); *United States v. Ruiz-Apolonio*, 657 F.3d 907, 917 (9th Cir. 2011) (holding a district court "has the discretion to grant a variance from the [Sentencing] Guidelines after promulgation but before adoption of a proposed amendment"). Therefore, the Court finds basis to consider the Sentencing Commission's amendment to U.S.S.G. § 1B1.13, which became effective on November 1, 2023, and provides clarification on "extraordinary and compelling reasons."

"For the prisoner's health to count as an extraordinary and compelling reason," the defendant must overcome a "high bar." *United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *1 (3d Cir. Apr. 20, 2022). The defendant bears the burden of establishing compelling and extraordinary reasons which justify compassionate release. *United States v. Epstein*, No. 14-287-1, 2020 WL 2537648, at *2 (D.N.J. May 19, 2020) (quoting *United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020).

Here, the Court finds Williams has failed to satisfy his burden of establishing that his "[m]edical [c]ircumstances" constitute extraordinary and compelling reasons justifying compassionate release. U.S.S.G. § 1B1.13. Williams's medical records demonstrate that the BOP is providing him with "specialized medical care" for his CKD, obesity, and prediabetes. U.S.S.G. § 1B1.13(b)(1)(C).

A detailed review of Williams's medical records reveals that he has received appropriate

care for his CKD. (*See generally* Williams's Medical Records (ECF No. 78).) In fact, his right flank pain, an indicator of kidney disease, which Williams refers to throughout his moving papers, has improved. (*Id*. at 14 (reporting he "no longer has right flank pain").) Williams has received diligent care from the BOP's medical staff for a myriad of other health conditions including chronic knee pain, an ear infection, a COVID-19 infection, bronchitis, cold-related symptoms, obesity, prediabetes, and a mass in his neck.[10]

Further, Williams can properly manage his weight and prediabetes at Fort Dix. The Court agrees with the Government's assertion that William's ability to exercise "would not change, were he to be released from Fort Dix." (ECF No. 73 at 11.) The BOP's medical staff has provided Williams with continued guidance on how to manage his obesity.[11] Indeed, as the Government notes, "Williams weighed six pounds less in May 2023 than he did in December 2022." (ECF No. 73 at 11.)

Even though Williams asserts he is not pursing the "specific COVID-19 issue [of Williams's health problems in the context of COVID-19] per se at this time," (ECF No. 70 at 14), Williams also submits that "COVID-19 restrictions still in place have created an unhealthy environment," (*id*. at 20). The Court finds Williams's complaints about the conditions at Fort Dix

---

[10] The May 30, 2023 report details the care Williams received following the discovery of a mass in his neck. (*Id*. at 16.) As of January 7, 2023, there was a "[s]olid lesion left posterior neck – suggestive of fatty collection of lipoma." (*Id*.) Williams had a surgeon's consultation on April 4, 2023 where he agreed for a excisional biopsy on the mass. (*Id*.) The July 24, 2023 report provides Williams underwent a neck mass excisional biopsy that day. (*Id*. at 8.)

[11] Both the December 27, 2022 report (ECF No. 78 at 38) and the May 30, 2023 report (*id*. at 16) indicate that Williams "is being counseled for healthy lifestyle changes including weight reduction by cutting back on calories." Similarly, both aforementioned reports state Williams was "counseled for dietary modifications (reduction in calories: 500 to 750 calories deficit/day, intermittent energy restriction, restriction of simple carbohydrates, saturated fat, and sodium/sugar intake); [and] exercise (150 minutes of moderate exercise per week)." (*Id*. at 20, 43.)

are "generalized statements about the conditions of confinement [that] do not constitute compelling reasons for compassionate release." *United States v. Farmer*, No. 19-427, 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022) (denying compassionate release where defendant stated "that the conditions of his confinement have been particularly harsh and restrictive, marked by months of lockdowns, isolation in quarantine, fear of infection, and a lack of access to programming"). In other words, merely detailing "inadequacies in [a correctional facility's] response to the pandemic" does not warrant compassionate release. *United States v. Scalea*, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022).

Therefore, the Court finds Williams does not meet the required "extraordinary and compelling" standard for a sentence reduction and compassionate release. *See Epstein*, 2020 WL 2537648, at *4–6 (denying an inmate's motion for compassionate release after finding that his health conditions were under control while in prison).

### 2.   Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons were present, Defendant has not demonstrated compassionate release would be appropriate under the § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) factors include, among other considerations, "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C).

Williams argues the percentage of his time served has increased. (ECF No. 70 at 11.) Williams further notes he is now eligible under the First Step Act whereas he was not at the time

of his prior motions for compassionate release. (*Id.*) Additionally, Williams asserts he was accepted into the BOP's Residential Drug Abuse Program (the "RDAP"). (*Id.* at 13.) Williams contends that "[h]ad the program actually started when he was deemed eligible and moved to the RDAP building he would have already received the benefit of being halfway house eligible by approximately June 2023." (*Id.* at 13–14.) Williams argues the First Step Act and the RDAP credits represent two looming and significant reductions in his sentence. (*Id.* at 14.) In the supplemental letter filed on June 5, 2023, Williams asserts he has received a one-year reduction of his sentence under the First Step Act and therefore his release date is now June 11, 2025. (ECF No. 72 at 1.)

The Government counters the Court should deny relief because the § 3553(a) factors weigh against relief. (ECF No. 73 at 11–12.) The Government submits Williams's acceptance into the RDAP does not negate the serious nature of his offense. (*Id.*) Additionally, the Government asserts records related to Williams's admission to the RDAP reveal that he is precluded from an early release pursuant to 18 U.S.C. § 3621(e)(2)(B). (*Id.* at 12.)

In reply, Williams argues he has bettered himself since the Court sentenced him on September 12, 2018. (ECF No. 74 at 6.) Additionally, Williams concedes the Government is correct in asserting that he is not entitled to a reduction of his sentence by admittance into the RDAP because of the nature of his underlying conviction and the language in 18 U.S.C. § 3621(e)(2)(B). (*Id.* at 6–7.) However, Williams asserts he has accrued 400 days towards halfway house eligibility and thus may be eligible for a halfway house soon. (*Id.* at 8–9.)

As discussed in the September 6, 2022 Opinion, the Court applauds Williams's effort to rehabilitate his character and recognizes his exemplary conduct while incarcerated. Nonetheless, the Court once again finds the applicable sentencing factors under § 3553(a) do not indicate granting Williams's motion for compassionate release and reducing his sentence would be

appropriate. The Court agrees with the Government that the nature and circumstances of Williams's offense are serious. (ECF No. 73 at 12.) The Court again notes Williams pled guilty to: (1) conspiracy to distribute a combined 141 kilograms (approximately 310 pounds) of cocaine and heroin; and (2) assault of two federal officers. (ECF No. 24 at 8.) The Court finds Williams's serious offense requires "a significant period of incarceration," *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020), and the Court's conclusion remains the same as when the Court sentenced him. *See United States v. Moore*, No. 19-101, 2020 WL 4282747, at *7–8 (D.N.J. July 27, 2020) (denying compassionate release based on § 3553(a) factors although defendant only had four months remaining on sentence for being a convicted felon in possession of a firearm). Furthermore, after applying Williams's First Step Act credits and even assuming Williams will receive his projected good time credit, as of June 20, 2023, his projected release date according to the BOP is June 11, 2025 (ECF No. 74-1 at 2), which means Williams still has a significant portion, over eighteen (18) months, of his sentence remaining. *See Pawlowski*, 967 F.3d at 331 (holding the time remaining on a defendant's sentence is an appropriate factor to consider for compassionate release).

Accordingly, because the Court finds Williams has not demonstrated that the applicable § 3553(a) factors support a reduction of his sentence, his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Williams's Motion for Reconsideration or, in the alternative, Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: November 21, 2023